GALE and WISNER *vs.* WELLS.

Where a guardian, soon after the ward becomes of age, but while the latter is still at college, and before the guardian has settled his accounts with his ward, procures the ward's indorsement to a note made by the guardian for the payment of a precedent debt owing by the guardian, to a third party, who takes such note and indorsement with notice of the relations between the maker and indorser, the note can not be enforced by him, against the ward. EDWARDS, J. dissented.

The law infers undue influence in such a case, without allowing an inquiry whether it actually exists or not; on account of the difficulty of establishing it, and the danger, to wards, of leaving that question open while the relationship of guardian and ward exists.

A creditor of the guardian, who has demands against him which are due and unpaid, and who agrees to give him further time for payment, if he will procure the indorsement of his ward, if aware of the relationship, is in no better situation than the guardian himself, and will be affected by the same equities.

Gale *v.* Wells.

If such creditor knows that the relationship of guardian and ward had existed between the maker and indorser of such note, he is bound to make inquiry as to their present relations to each other; and if he omits to obtain the necessary information when in his power, he is accountable for his omission.

A qualification made by a judge in his charge to the jury, which is not authorized by the evidence, is ground for a new trial.

If the judge, by his charge, leaves it to the jury to infer, or to disbelieve the existence of undue influence, under a state of facts from which the law would infer such influence, and the verdict is contrary to the inference of law, a new trial will be granted.

This was an action of assumpsit, brought by the plaintiffs against the defendant as the first indorser of a promissory note for $960,47, dated Newburgh, June 29th, 1842, made by John A. Wells, payable twelve months after date, to the order of George W. Wells, [the defendant,] at the Bank of Newburgh. The declaration contained the common money counts only, to which the defendant pleaded the general issue.

The cause was tried at the New-York December circuit, 1847, before H. Gray, J. and a jury. On the trial the plaintiffs' counsel called as a witness, John A. Wells, the maker of the note, who testified that he knew the defendant, who was his cousin; that the indorsement of the promissory note, produced and shown to the witness, was in the hand-writing of the defendant; that both of the defendant's parents had been dead several years before; his mother died in 1832, his father before that time; witness had been the guardian of the defendant and his brother, and made the note in question, which he delivered to William H. Wisner, one of the firm of Wisner, Gale & Co. of the city of New-York, grocers, to whom the witness was indebted for several bills of goods furnished by them, all of which were due before that time. William H. Wisner came to Newburgh at that time, to get a note, with an indorser, to secure the debt due to his firm from the witness, whom he asked for his note with an indorser, and who then offered him the defendant, then staying at witness' house, and he accepted the offer, before the witness spoke to the defendant about it. Wisner saw the defendant at the store of the witness, knew that he was at college, and that

the witness had been his guardian. Witness told the defendant that Wisner was there, and what he wanted, and the defendant, at the request of the witness, indorsed the note at the desk in the store of the witness in Newburgh, and about eight or ten feet from the door, at which Wisner stood at the time of the indorsement. The witness was not at that time the guardian of the defendant, who was then of age, having been born in January, 1820; but he was indebted to the defendant at that time, probably about one thousand dollars. The defendant was at that period, a student of Bowdoin College, and graduated in October or November following; he came to Newburgh in June, 1842, to get money to pay his bills at college, and witness gave him, on the 7th July, 1842, $300, which he thought was raised on a note for that amount made by him, and indorsed by the defendant, and which was discounted at the Bank of Newburgh, and paid by the witness; who afterwards gave the defendant $200 or $300 in cash. There was also a $100 note made by witness, and indorsed by the defendant, to raise money for the defendant, and the witness thought there was another note, but could not tell the amount, which was also to raise money for the defendant; but he indorsed no note unless to raise money for himself, except the note in question in this suit. The witness also testified that in June, 1842, he was able to pay the defendant, but he did not ask for his pay, nor did he ask the witness for a settlement of his accounts; there had been a chancery suit between them about those accounts, but the witness had not heard from it in a long time. The witness failed in August, 1843. He made an assignment for the benefit of the defendant and his brother, who was also a ward of his; and he understood the assignee had paid part of the debts.

After the plaintiffs rested their case, the defendant's counsel moved for a nonsuit, on the following, among other grounds: That the evidence of the witness, John A. Wells, showed that the indorsement was obtained by him, from the defendant while the influence of the relation of guardian and ward subsisted, so that the witness could have been restrained in equity from using the same, and that the plaintiffs had no better right, having taken

Gale *v.* Wells.

the note to secure a precedent debt, and having also had notice of the equities between the maker and indorser. But the court denied the motion, and decided that although the evidence showed enough to have induced a court of equity to restrain the witness, John A. Wells, from parting with the note while it continued in his possession, yet the plaintiffs must be considered as holders for a valuable consideration, if in consideration of receiving this note with the defendant's indorsement, the plaintiffs agreed with the maker to give him a year's time for the payment of their debt, and that this fact, as well as the question of notice to them, were questions for the jury. To this denial and decision the defendant's counsel excepted; and the cause being then summed up on both sides, the defendant's counsel prayed the court to charge the jury: *First,* That the plaintiffs having taken the note as security for a precedent debt, were not *bona fide* purchasers for value. *Second,* That William H. Wisner had enough notice to put him upon inquiry, and therefore must be charged with full notice. But the court refused so to charge the jury, as to the *first* request; and also as to the second request in the manner in which it was stated. The defendant's counsel excepted, and the court then charged the jury, that if from the evidence in relation to the giving the note, (which he then repeated to the jury,) they were satisfied that the plaintiffs agreed to give the witness, John A. Wells, a year's time to pay his debt, in consideration of his procuring the defendant's indorsement of the note in suit, and that the note was made by the witness, John A. Wells, and the indorsement of the defendant procured in pursuance of that understanding and agreement, and delivered to the plaintiffs, then the plaintiffs were *bona fide* holders of the note, and entitled to recover if there was no other defense, notwithstanding the note was given as security for a precedent debt. The court also said that it was insisted by the defendant's counsel, that the defendant was under the influence of the witness, John A. Wells; that the relation of guardian and ward had so recently existed between them, that the exercise of undue influence growing out of that relation, should be inferred. That if the defendant had just emerged from his

minority, and was at that time under the influence of his late guardian, then perhaps the note ought not to be upheld ; that the jury must be satisfied, before the question of undue influence could affect the plaintiffs, that they knew that the relationship of guardian and ward had existed between the witness and the defendant, and of the defendant's age, and understood at the time that the defendant was under the influence of the witness ; if not, then the plaintiffs would be entitled to recover : That if the plaintiffs knew that the relationship of guardian and ward had existed between the witness, John A. Wells, and the defendant, and the accounts were unsettled between them, the exercise of undue influence by the guardian over the ward might be inferred, and the note rendered invalid, unless the defendant gave the note upon full deliberation on his part; in which latter case, the plaintiffs would be entitled to recover. To all and every part of the charge, the defendant's counsel excepted. And he then further requested the court to charge the jury, that if Mr. William H. Wisner knew the defendant, and saw him there at Newburgh, knew that he was still at college, and depending on his guardian, and that John A. Wells was his guardian, then he had notice enough to put him upon inquiry as to the state of the guardian's accounts, and his influence. And he further prayed the court to charge the jury, that if the defendant was under the witness' influence as his guardian, depending on him for money, and his accounts unsettled, no deliberation, if proven, would be sufficient to maintain the indorsement. But the judge refused so to charge as to any of these points, and remarked that he had already sufficiently charged, substantially, upon these points. The defendant's counsel excepted to these refusals. After the jury had retired about three hours, they desired some advice from the court, and having for that purpose returned to the court room, (the parties and their counsel being absent) one of the jurors, in behalf of his fellows, inquired of the justice "Whether, if the jury found that the relation of guardian and ward had existed between the witness, Wells, and the defendant, that of itself (without reference to the question, whether or not the accounts between them were settled,) would

be sufficient to warrant the presumption of undue influence by the witness, Wells, over the defendant ?" The justice, before responding to the question, reduced it, and his answer thereto, to writing, and then read the answer as follows : " That if the plaintiffs knew at the time of the indorsement of the note by the defendant, that the relation of guardian and ward had existed between the maker and indorser of the note, that of itself was not sufficient to warrant the presumption, (after the lapse of eighteen months from the expiration of that relation,) that the note was executed by reason of undue influence by the guardian over the ward, growing out of their previous relations. But if the plaintiffs were apprised of the fact that the accounts between the guardian and ward had not been settled, then such inference might be drawn. And that the jury must be satisfied that the note was indorsed upon full deliberation by the defendant—not influenced by the relation that had existed, or yet existed between the maker and indorser." The justice declined answering any inquiries in relation to the facts of the case, in the absence of the counsel of the respective parties. The next morning, before the jury had delivered their verdict, the justice announced to the counsel for the respective parties, that a question had been put to him by the jury, and he read his answer thereto, as above set forth, and that he made it known to the counsel that either, or both might except before the verdict was taken. The defendant's counsel then excepted to the last mentioned charge. The jury then handed to the court their sealed verdict, by which they found for the plaintiffs $1258,61 damages, and six cents costs.

*H. S. Dodge,* for the defendant.

*J. S. Bosworth,* for the plaintiffs.

Mitchell, J. This action is by Gale and Wisner against the defendant, as indorser of a note, made by John A. Wells, payable to the order of the defendant and indorsed by him, for $960,47. The note was dated Newburgh, June 29, 1842,

and payable twelve months after date, at the Bank of New-burgh. The only witness who proved the origin of the note, and the circumstances under which it was given, was J. A. Wells the maker; he testified that the defendant's mother died in 1832, and his father before that time; that he, the witness, had been the guardian of the defendant until he became of age, which was in January, 1841, about eighteen months before the note was given. But that when the note was given, and until the following fall, the defendant continued to be a student at college. That at the time of giving the note, the witness' accounts as guardian were not settled, and he owed the defendant about $1000; and that a suit in chancery was still pending at the time of the trial, as to those accounts. That he was able to pay the defendant in June, 1842; but he was not then asked for a settlement of his accounts. That on the 7th of July, 1842, he paid the defendant $300 on account, to pay his college bills, in a note made by him, indorsed by the defendant, discounted at the bank, and afterwards taken up by the witness, and who in like manner paid the defendant $100 more. That he, the witness, failed in August, 1843, and made an assignment, in which the defendant, and another person, for whom also he was guardian, were preferred, and that he understood the assignee paid part of these debts. That Wisner, one of the plaintiffs, came from New-York to Newburgh, and on the 29th of June, 1842, saw the defendant at J. A. Wells' store, and knew that the defendant was then at college, and that J. A. Wells had been his guardian. That Wisner's object in coming to Newburgh, was, to secure a debt of about $900, which the witness owed to the plaintiffs on several bills of goods, all due before that time. That Wisner told the witness he would give him a year if he would get an indorser, and that the witness proposed the defendant's name to him, without consulting the defendant, and Wisner said it would be satisfactory. The witness then asked the defendant to indorse the note for him, told him that Wisner was there, and what he wanted, and the defendant indorsed it. Wisner stood at the door of witness' store, at the time of the indorsement, probably eight or ten feet from the de-

Gale *v.* Wells.

fendant; nothing was said about settling accounts between witness and the defendant.

July 2, 1843, being Sunday, the note fell due on the first day of July, 1843; it was then presented for payment, and payment refused, and notice sent by the notary, by that evening's mail, to the third indorser, the cashier of the bank in New-York; that was received in New-York, on Monday the 3d of July, and on that day, or on the 5th, (the 4th being a holiday) was sent to the plaintiffs; and on the 5th, the plaintiffs mailed to the defendant at Newburgh, a copy made by them of the notice, copying the notary's name, his residence, and the date as given by him; and not adding their own names. This was received in Newburgh in due course of mail.

There is no clashing of evidence in this case. The defendant moved for a nonsuit, 1. On the ground that as the plaintiffs sent a notice of protest they should have sent it in their own name, and not made it a mere copy of the notary's notice, with his name alone, and the date given by him. 2. That the indorsement was obtained while the influence of the relation of guardian and ward subsisted, so that the witness could have been restrained in equity from using the same; and that the plaintiff had no better right, having taken the note to secure a precedent debt, and having notice of the equities between the maker and indorser. The judge held the notice to be sufficient in form, and that although the evidence showed enough for a court of equity to have restrained J. A. Wells from parting with the note, yet the plaintiffs must be considered as holders for a valuable consideration, if, in consideration of receiving this note, they agreed with the maker to give him a year's time; and he refused the nonsuit. The judge, although requested, refused to charge that the plaintiffs were not bona fide purchasers for value, or that they had notice enough to put them on inquiry, and so should be charged with full notice; and charged that the jury must be satisfied—before the question of undue influence could affect the plaintiffs—that they knew that the relationship of guardian and ward had existed, and knew his age, and *understood*, at the time, that the defendant was under the influence

Gale *v.* Wells.

of the guardian; if not, that the plaintiffs would be entitled to recover. The defendant excepted.

The evidence clearly showed that the relationship of guardian and ward still substantially existed; that J. A. Wells was still acting in continuance of his old trust, although his ward had then been of age eighteen months before; his ward was still at college, pursuing his studies there; J. A Wells had never settled his accounts with him; still owed him $1000; and when he afterwards paid any thing, paid it not in cash, but in notes discounted, with the defendant's indorsement, although they were afterwards taken up by J. A. Wells. The plaintiffs knew that J. A Wells had been guardian, and they knew that the defendant was still at college. This last circumstance, if they had chosen to reflect, as they were bound to do, before they took the security of one who (they knew) had been the ward of their debtor, would have suggested to them that the defendant was still, probably, under the care of his former guardian, so far as his property was concerned. Knowing that the defendant was still at college, they might fairly have supposed that he was even younger than he really was, and perhaps hardly yet twenty-one years of age; and if correctly informed on that point, it still would be an intimation to them that he had not yet become fitted to enter on the active duties of a man, and that probably, his guardian still continued his trust, and controlled the property of the defendant. From that control the law infers the influence and control of the guardian over one who has been his ward. This being so, the plaintiff had all the knowledge from which he was bound to infer facts which, in law, showed the defendant to be under the influence of his former guardian. That inference of law the plaintiffs are also presumed to know, or if they do not know it, their ignorance can not avail them, to create or sustain a cause of action against an innocent party. In cases of this kind, all the circumstances are to be considered together, whether for or against the plaintiffs. It is not sufficient, therefore, to produce authorities to show that if there had never been the relationship of guardian and ward, and all had been perfectly fair, the plaintiffs, by giving time to the maker, would have been

Gale *v.* Wells.

*bona fide* purchasers, in such a sense that they might have sus-
tained an action against the defendant, as indorser. And then
to assume that unless actual undue influence be proved, and be
shown to have been known to the plaintiffs, they are in as good
a position as one would be who had taken the note, already in-
dorsed, from a third party, and paid a new consideration for it.
Time given may be a sufficient consideration even as against an
accommodation indorser, but that does not complete the proof
of a bona fide purchaser; it must also be shown that he became
such purchaser without notice of any defense that the indorser
might make. On the subject of what the plaintiffs ought to
have inquired, and what they ought to have endeavored to know,
a stricter rule might fairly be applied to the plaintiffs than to a
purchaser for a new and full consideration. In the last there
might be no cause of suspense. So if the defendant had come
to the plaintiffs and made to them the proposal that they should
take his indorsement, and give to their debtor a new credit, or
give him indulgence merely, this, also, might justly have quieted
any suspicions. But here the plaintiffs knew, too, that J. A.
Wells had been remiss in paying them, and had allowed several
bills for goods sold by them, to remain unpaid, and that his sit-
uation was such that they would not trust him alone, but wanted
from him an indorser for the debts due by him. They would
not do so, unless they had been apprehensive that their debtor
was not solvent; yet they readily accept the suggestion of their
defaulting debtor to make the defendant assume a responsibility
to them, for which he was to receive no benefit, and for which
they were to give nothing, except indulgence to their original
debtor. Under these circumstances it was their duty to use
greater diligence in ascertaining the freedom of the proposed
surety from restraint, than it might be if these suspicions as to
the debt had not existed in their own mind. But they made no
inquiry. Wisner, one of the plaintiffs, stood at the door of the
store, about eight or ten feet from the desk, where the defendant
probably indorsed the note; he had thus the opportunity of
knowing every thing on the spot, merely by asking for it. If
he thought it more prudent to ask no questions, lest the asking

of them should prevent his getting the security, he is accountable for his omission; and if no such thought crossed his mind, yet, with the knowledge he already had, and the present means at hand of learning the whole truth at the moment, he can be in no better legal position. In law, whether his omission to inquire (when he had the opportunity and was bound to inquire,) proceeded from design or neglect can make no difference as to his rights. As one who receives a note as a gift, may have no cause of action, notwithstanding any precautions he may take, so it may fairly be required that more caution be used by one who, on receiving a note, gives no consideration except delay on an antecedent debt, than by one who pays a new and valuable consideration on the transfer of the note.

The judge at the circuit at first admitted, that if the plaintiffs knew that the relationship of guardian and ward had existed, and the accounts were unsettled, the exercise of undue influence might be inferred, and the note rendered invalid, unless the defendant gave the note *upon full deliberation* on his part; in which case, he said, the plaintiffs would be entitled to recover. This left it to the jury to infer, or to disbelieve, the undue influence; whereas under the state of facts supposed, the law would infer the influence. It infers it without allowing an inquiry whether it actually existed or not, on account of the difficulty in such cases of establishing it, and the danger to wards of leaving open that question, while that relationship exists. (*Hatch* v. *Hatch*, 9 *Ves.* 296.) The judge also was wrong, in qualifying the principle stated by him, by saying that if the defendant gave the note upon full deliberation, the plaintiffs were entitled to recover; for there was not the slightest evidence of any deliberation on the part of the defendant; and his deliberation, while under the influence of the guardian, would not avail the plaintiffs. See *Small* v. *Smith*, (1 *Denio*, 586,) that a qualification not authorized by the evidence is ground for a new trial. This charge, however, afterwards, when the jury asked for further instructions, he qualified so as to instruct them that the influence could not be inferred from the plaintiffs' knowing of the relationship that had existed between the parties; but that

Gale v. Wells.

the plaintiffs must also have been apprised of the fact that the accounts between them had not been settled. Under the views before stated, this inference was one which the law itself drew from the circumstances of the case. So the first part of the charge, that the plaintiffs, to be barred, must have understood, at the time, that the defendant was under the influence of the guardian, is too broad. If they knew facts from which the law would infer that influence, they were as much affected as if they knew the influence. (*See Huguenin* v. *Baseley*, 14 *Ves.* 283, *the admissions of counsel, and* 289, *the quotation from Lord Ch. J. Wilmot ; Wright* v. *Proud*, 13 *Id.* 136 ; *Hatch* v. *Hatch*, 9 *Id.* 292 ; *Hylton* v. *Hylton*, 2 *Ves.* 547, *release and grant set aside although executed* 18 *months after the ward was of age, and the principle of them recognized in Kirby* v. *Taylor*, 6 *John. Ch. R.* 248.)

Some motive must have influenced the defendant in indorsing the note ; nothing of benefit to himself was pretended or proved, so that it would follow that he did it from that confidence which the relationship between him and J. A. Wells had created ; a confidence in one who was his uncle, who had been and was to him still in *loco parentis*, who had been his guardian, and still acted in that capacity. This certainly showed an influence over him, although it did not show any intentional wrong.

A new trial should be granted ; costs to abide the event.

EDMONDS, P. J. concurred.

EDWARDS, J. The facts, in this case, which may be assumed as having been proved at the trial, are, that John A. Wells had been the guardian of the defendant, who became of age in the month of January, 1841 ; that John A. Wells was indebted to the plaintiffs, who requested him to give them an indorsed note ; and promised that if he would do so, they would give him a year for the payment of his debt ; that he proposed the defendant as an indorser, and was told that he would be satis- factory ; and that on the 29th of June, 1842, he gave to the plain-

tiffs a note of that date, made by himself, and indorsed by the defendant.

Upon this state of facts, the counsel for the defendant presented several legal propositions to the justice before whom the cause was tried, the substance of which was, that as the relation of guardian and ward had existed between the maker and indorser of the note, and as their accounts were unsettled at the time the note was given, the same was void, although the defendant was then of age; and that the plaintiffs, having taken the note for an antecedent debt, the defendant was chargeable with notice of the circumstances under which the note was given, and requested the justice so to charge the jury. Instead of charging as thus requested, the justice instructed the jury, *first*, "that if they were satisfied from the evidence, that the plaintiffs agreed to give John A. Wells a year's time to pay his debt, in consideration of his procuring the defendant's indorsement of the note in suit, and that the note was made by Wells, and the indorsement of the defendant procured in pursuance of that understanding and agreement, and delivered to the plaintiffs, then the plaintiffs were *bona fide* holders of the note, and entitled to recover if there was no other defense, notwithstanding the note was given as a security for a precedent debt." *Second*, "that if the defendant had just emerged from his minority, and was at the time under the influence of his late guardian, then, perhaps, the note ought not to be upheld. The jury must be satisfied, before the question of undue influence could affect the plaintiffs, that they knew that the relationship of guardian and ward had existed between the witness and the defendant, and of the defendant's age; and understood, at the time, that the defendant was under the influence of the witness, if not, then the plaintiffs would be entitled to recover." *Third*, "that if the plaintiffs knew that the relationship of guardian and ward existed between the witness and the defendant, and that the accounts were unsettled between them, the exercise of undue influence by the guardian over the ward, might be inferred, and the note rendered invalid, unless the defendant gave the note upon full deliberation on his part; in which latter case, the plaintiffs

Gale v. Wells.

would be entitled to recover." The counsel for the defendant excepted to the judge's charge, and also to his refusal to charge as requested. There were other exceptions taken, but with the views which I entertain, it is not necessary to allude to them, in reference to this branch of the case.

It is an ancient rule of equity jurisprudence, that in all transactions between parties whose relations are of a confidential and fiduciary character, the highest degree of good faith (*uberrima fides*) is required. And the transactions, which of all others have been viewed with the most suspicion, are those between guardian and ward. In the application of this principle, it was held, that a gift or gratuity to a guardian by his ward soon after coming of age, and before the guardian's accounts were settled, ought to be set aside upon principles of public utility, even where there was no proof of imposition, or undue influence. (*Hylton* v. *Hylton*, 2 *Ves. sen.* 547. *Hatch* v. *Hatch*, 9 *Ves.* 292.) In the same spirit it was also held, that even after the accounts were settled, all transactions which were advantageous to the guardian, and prejudicial to the interests of the ward, should be set aside, unless it appeared that there had been the fullest deliberation on the part of the ward, free from any undue influence, or circumstances of imposition. (*Lady Sanderson's case, cited,* 13 *Ves.* 138. *Wright* v. *Proud, Id.* 136. *Archer* v. *Hudson,* 7 *Beav.* 551. *Maitland* v. *Irving,* 10 *Jurist,* 1025. *Maitland* v. *Backhouse,* 6 *N. Y. Legal Observer,* 170, *S. C.,* 16 *Sim.* 58.)

But, it will be observed, that this is an equity rule. And in the last case cited, which is, in most of its circumstances, similar to the one before us, the indorser deemed it necessary to file a bill in chancery, to restrain the indorsees from bringing a suit upon the note, instead of attempting to set up the circumstances as a defense at law. In the case of *Chesterfield* v. *Janssen.* (2 *Ves. sen.* 125, 155,) Lord Hardwick, after enumerating the different kinds of fraud in equity, says; "a third kind of fraud is that which may be presumed from the *circumstances and condition* of the parties contracting; and this goes farther than the *rule of law ;* which is, that it must be proved,

not presumed." And in the case of *Fullagar* v. *Clark,* (18 *Ves.* 483,) Lord Eldon says, "my opinion is that this court will, as it ought in many cases, order an instrument to be delivered up, as unduly obtained, that a jury would not be justified in impeaching by the rules of law, which require fraud to be proved, and are not satisfied, though it may be strongly presumed ; as Lord Hardwicke said in the case of *Lord Chesterfield* v. *Janssen ;* and as Lord Kenyon has intimated in other cases. This jurisdiction may be exercised upon such a point, where a court of law could not enter into the question, as a court of equity is bound to do." The result of these opinions is, that in a court of law fraud can not be presumed from the condition of the parties, or, as Lord Eldon expresses it, a court of law can not enter into the question.

The fraud which was insisted on by way of defense in the case before us, arose solely from the condition of the parties, so that the justice at the circuit went much farther in favor of the defendant, than the law authorized him to go. He gave the defendants the full benefit of the equity rule, subject only to the qualification that the plaintiffs should have had notice of the circumstances under which the note was given.

If, then, the distinguished jurists whose opinions I have quoted are correct in their views of the law, it is immaterial whether the note in suit was given in consideration of an antecedent debt, or not, and whether the plaintiffs had, or had not notice of the circumstances under which it was given, as there was no pretense of actual fraud. The defendant was of full age, and competent to contract, and as between himself and the plaintiffs he stands, in a court of law, in the same situation as any other person would.

The question then arises, whether the plaintiffs would have been entitled to recover, if there had been no evidence given as to the confidential relations between the maker and the indorser of the note. It is well settled that an accommodation note may be enforced against the maker, although it is passed off as a security for an antecedent debt. And it has been held in this state, that it may be so enforced although the maker supposed

that the payee intended to have it discounted, and gave it to him for that purpose, there being no fraud in the case. (*The Bank of Rutland* v. *Buck*, 5 *Wend.* 66. *Grandin* v. *LeRoy*, 2 *Paige*, 509.)

There were other objections taken to the ruling at the circuit, but none of them appear to me to be sufficient to justify us in granting a new trial.

New trial granted; costs to abide the event.

[NEW-YORK GENERAL TERM, October 6, 1851. *Edmunds*, *Edwards* and *Mitchell*, Justices.]