## SPAULDING VS. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

RAILROAD COMPANY. (1–5) *Liability for losses by fire caused by locomotives.*
(1) *Acts within scope of fireman's employment.* (2–5) *Presumption as to defective condition of engine — Province of court and jury.*
REVERSAL OF JUDGMENT. (6, 7) *When judgment reversed for erroneous instruction.*

1. In an action for injuries to plaintiff's woodland, by fires communicated from locomotive engines on defendant's railroad, there was testimony to show that one of the fires was caused by the fireman or engineer throwing from the locomotive a burning stick of wood, which fell into dry grass and leaves near the track, and that it was not unusual for defendant's firemen to throw off sticks of wood which had been tried and found too large to enter the furnace door, and to which fire might adhere. *Held,* that the act was one *within the scope of the servant's employment,* and, if it was a negligent one, defendant was liable for the consequences. ·

2. The fact that damage was caused by fire escaping from a locomotive engine, creates a *presumption* that the engine was defective in construction or condition, which throws upon the railroad company the burden of proving the contrary.

3. Such presumption is, however, merely a *presumption of law;* and it is *for the court,* and not for the jury, to determine the amount and character of the proof necessary to overcome it.

4. Where, therefore, the testimony for the defendant company, as to the *construction and condition* of its engines, was *entirely uncontroverted,* and was clear and decided to the point that they were properly constructed and equipped, and provided with all the most modern and approved appliances for preventing the escape of fire, it was error for the court to submit that question to the jury.

5. If *the testimony* in relation to the construction of the engines had been *conflicting,* the question would have been one for the jury.

6. A judgment will not be reversed for error, where it is clear that the verdict was not affected by such error; otherwise, where it may have been so affected.

7. In this case the court erroneously refused an instruction that the evidence did not warrant a finding that defendant was guilty of any fault or negligence in the construction or condition of its engines. But it instructed the jury that if the fires were caused by the escape

Spaulding vs. The Chicago & Northwestern Railway Company.

of sparks from defendant's engines, *that fact alone was not sufficient* to justify a finding that such engines were defective. There was *no other evidence* to show that the engines were not properly constructed and in good condition. *Held*, that it is not certain that the jury, under these circumstances, did not find that the engines were defective, and render their verdict for plaintiff on that ground, and therefore the judgment must be reversed for such erroneous refusal.

APPEAL from the Circuit Court for *Rock* County.

The defendant appealed from a judgment in favor of the plaintiff. The nature of the action will sufficiently appear from the report of a former appeal therein, 30 Wis., 110, and from the opinion, *infra.* .

. *Pease & Ruger*, for appellant, conceded that a master is liable for the willful act of his servant where such act constitutes negligence of the master, or, in other words, where it was done in the course of the servant's employment, and within the scope of his authority ; and they divided the cases on this subject into four classes : (1) Cases where the master's work or directions *naturally involve* the commission of the wrongful act. In such a case it is presumed that he expected and intended the act to be committed ; and unless this presumption is rebutted, he stands in the same position as if he had expressly directed, or had himself committed it. Examples of this class are *Gregory v. Piper,* 17 E. C. L., 266 ; *Thames Steamboat Co. v. Railway Co.*, 24 Conn., 40. (2) Cases where the master's work or directions did not naturally involve the commission of the unlawful act, but the servant has nevertheless in good faith (as regards the master), committed such an act, honestly intending thereby to accomplish or further the work which the master had directed him to perform. Here the master is chargeable, not upon the ground (erroneously stated in some cases), that he has impliedly authorized the act, although he did not foresee or intend its commission, but simply because, by reason of the servant's wrongful act, the *master's work* has been negligently performed. He is bound to see that *his work* is pru-

dently performed, and is liable if it is not so done. *Bailey v. R'y Co.* L. R., 7 C. P., 515 (3d Eng. R., 308); *Higgins v. Watervliet T. Co.*, 46 N. Y., 23; *Ramsden v. R'y Co.*, 104 Mass., 117; *Smith v. Webster*, 23 Mich., 298; *Sanford v. R'y Co.*, 23 N. Y., 343; *Croft v. Allison*, 6 E. C. L. 614; *Hay v. Cohoes Co.*, 3 Barb., 42; *Wolfe v. Mesereau*, 4 Duer, 473; *Harris v. Mabry*, 1 Ired. (Law), 240; *Priester v. Angley*, 5 Rich. (S. C. Law), 44; *Luttrell v. Hazen*, 3 Sneed, 20, 25; *Southwick v. Estes*, 7 Cush., 385; *Moore v. R'y Co.*, 4 Gray. 465. (3) Cases in which the servant, in committing unnecessarily the wrongful act, seeks *boty to serve the master and to gratify some personal motive of his own.* Here, one *real* object being to serve the master, the act is not so disconnected from his work that the relation of master and servant ceases. But the more apparent the personal motive, and the more improper and unnecessary the act, the more difficult will it be to believe that the service of the master was in the servant's mind as a real object of the act. In doubtful cases of this character, it is for the jury to determine whether the act was intended to serve the master, or done *merely* to gratify the personal wishes of the servant under *pretense* of serving the master. Such cases as *Puryear v. Thompson*, 5 Humph., 397, and *Jackson v. Railway Co.*, 47 N. Y., 274, show how difficult it often is to determine this question. Examples of this class are *Seymour v. Greenwood*, 7 H. & N., 354; *Cosgrove v. Ogden*, 49 N. Y., 255; *Homes v. Wakefield*, 12 Allen, 580; *Railway Co v. Vandiver*, 42 Pa. St., 365; *Yerger v. Warren*, 31 id., 319; *Hewett v. Swift*, 3 Allen, 420; *Howe v. New March*, 12 id., 49; *Coleman v. Railway Co.*, 106 Mass., 160; *Church v. Mansfield*, 20 Conn., 284. (4) Cases where the servant, *from some purely personal motive*, commits a wrongful act while on duty in the line of his employment; including those cases where the servant *makes a pretense* of serving his master, as well as those where the act does not purport to be for the master's interest. In such cases the act does not ordinarily accomplish, or tend to accomplish, the master's work; but if, by chance, it did in some

way further the work, we do not see why this should make any difference in the master's liability. The act being wholly disconnected from the work *in purpose*, it is not seen why such a chance connection *in results* should charge him, more than if he were a stranger. In this class of cases the relation of master and servant does not exist as to the wrongful act of the servant. It follows, since the servant is not acting for his master, that his act is no part of the master's work, and cannot constitute a negligent performance of it. *McManus v. Crickett*, 1 East, 106 ; *Isaacs v. Railway Co.*, 47 N. Y., 122 ; *Railway Co. v. Wetmore*, 19 Ohio St., 110 ; *Crocker v. Railway Co.*, 24 Conn., 249, 265 ; *Railway Co. v. Donahue*, 70 Pa. St., 119 ; *Foster v. Essex Bank*, 17 Mass., 507–12 ; *Yates v. Squires*, 19 Iowa, 26 ; *Cox and others v. Keahey*, 36 Ala., 340 ; *Bowcher v. Noidstrom*, 1 Taunt., 568 ; *Timothy v. Simpson*, 25 E. C. L., 509 ; *Lyons v. Martin*, 34 id., 448 ; *Vanderbilt v. Richmond Turnpike Co.*, 2 Coms., 479 ; 1 Hill, 481 ; *Wright v. Wilcox*, 19 Wend., 343 ; *Steele v. Smith*, 3 E. D. Smith, 321 ; *Weldon v. Railway Co.*, 5 Bosw., 576 ; *Winterson v. Railway Co.*, 2 Hilt., 389 ; *Garvey v. Dung*, 30 How. Pr., 315 ; *Southwick v. Estes*, 7 Cush., 385. In the present case, according to some of plaintiff's witnesses, defendant's fireman, whose duty it was to keep the fire in the engine, throws a brand from it into the highly inflammable material at the way side and causes a fire. It was manifestly contrary to the defendant's interests and the fireman's duty, to scatter the defendant's fuel along the way, and thus kindle fires, which would almost inevitably destroy some portion of its fence. It was just as much a wrongful and injurious act to the defendant, as to the plaintiff. It did not in any way further, and had no connection with, the performance of defendant's work, and it does not seem possible that it could have been so intended. How would the case differ, if a master should direct his servant to burn the brush on a portion of his land, and the servant should, while doing so, intentionally throw a brand into another portion of the master's ground, covered with dry vege-

tation extending to a neighbor's woodland or barn yard, and the fire should first burn the master's fence, and then the neighbor's property? (See *Wilson v. Peveley*, 2 N. H., 548.) It is true that a witness says: "The firemen sometimes find sticks too large to go in the furnace door, and after trying them might throw them off the engine with sparks of fire adhering." Concede that this was such a case, and it simply appears that the fireman preferred to endanger the defendant's property and waste its fuel, rather than make it small enough with his axe, or leave it at a station where it could be made fit for use in the usual way. Can we say that the act would in such case further the defendant's work, or is there any just ground for assuming that the servant thereby intended to serve the defendant? But a stick that could not be put into the furnace door, would be over a foot in diameter, and altogether too large to be thrown so as to "whirl over in the air" a distance of 25 to 40 feet from the track. If a firebrand was thrown as stated, it appears to have been an act of pure vandalism. Suppose that A. and B. own manufactories situated on adjacent lots, and operated by steam power; that the grounds of both are covered with inflammable material; and that A.'s engineer takes a brand from his furnace and intentionally throws it into this inflammable material on his master's lot, and thereby destroys both manufactories. Would any one for a moment insist that this act of A.'s servant was done in the course of his employment? or that he was thereby serving or trying to serve his master? And would the case be materially changed if A.'s property had escaped injury, and B.'s only had suffered? We think not, nor do we see how the present case is distinguishable in principle from those supposed. It clearly falls within the fourth class, and the defendant is not liable for its consequences, because, as to this act, the relation of master and servant did not exist. But if it is not clear that this was the character of the act, it certainly was not so clear that it was negligent, as distinguished from willful, that the judge could

properly so charge. He should, at least, have submitted the question to the jury as one of fact, stating the distinction between mere negligence and intentional wrong, both as to the character of the acts, and the rules of law applicable. *Jackson v. R'y Co.*, 47 N. Y., 274; *Puryear v. Thompson*, 5 Humph., 397, and other cases cited *supra*. As to the question when a servant is acting within the scope of his authority and in the course of his employment, counsel further cited *McKinzie v. McLeod*, 10 Bing., 385 (25 E. C. L., 175); *Roe v. Railway Co.*, 7 Eng. L. & E., 546; *Mali v. Lord*, 39 N. Y., 381; *Mitchell v. Crassweller*, 76 E. C. L., 235; *Railway Co. v. Baum*, 26 Ind., 70; *Satterlee v. Groat*, 1 Wend., 272; *Garretzen v. Duenckel*, 50 Mo., 104; *Joel v. Morison*, 6 C. & P., 501 (25 E. C. L., 511); *Lamb v. Palk*, 9 C. & P., 629 (38 E. C. L., 261); *Patten v. Rea*, 2 C. B. (N. S.), 605; *Harris v. Nichols*, 3 Mum., 483; *Hazelton Coal Co. v. Megargel*, 4 Pa. St., 324–6, 329; *Douglass v. Stevens*, 18 Mo., 366–8; *McKoy v. McKowen*, 26 Miss., 487; *DeCamp v. R'y Co.*, 12 Iowa, 348. They also cited, as bearing upon the questions here discussed, *Jones v. Hart*, 2 Salk., 441; *Savignac v. Roome*, 6 Term, 125; *Tuller v. Voght*, 13 Ill., 277; *Tifft v. Tifft*, 4 Denio, 175; *Hibbard v. N. Y. & E. R'y Co.*, 15 N. Y., 455; *Fraser v. Freeman*, 56 Barb., 234; *Snodgrass v. Bradley*, 2 Grant's Cases, 43; *Lowell v. R'y Co.*, 23 Pick., 31, 3d point; 1 Hilliard on Torts (2d ed.), 103; 2 id., 432; *Moore v. Sanborne*, 2 Mich., 529–30; *E. Co. R'y v. Broome*, 6 R'y Cases (Eng.), 566; *Ferguson v. Terry*, 1 B. Mon., 96; *Ellis v. Turner*, 8 Term, 533; *Morse v. R'y Co.*, 10 Barb., 625; *Danner v. R'y Co.*, 4 Rich., 329; *Brasher v. Kennedy*, 10 B. Mon., 28; *Green v. London Omnibus Co.*, 97 E. C. L., 288; *P. G. & N. R'y Co. v. Wilt*, 4 Whart., 143; *Korah v. City of Ottowa*, 32 Ill., 121; *R'y Co. v. Dalby*, 19 Ill., 353; *Enos v. Hamilton*, 24 Wis., 663; *R'y Co. v. Downey*, 18 Ill., 259. 2. Counsel argued that the evidence introduced by the defendant as to the construction and condition of the engines was ample to rebut the presumption of fault in that respect arising from the mere occurrence of the fire.

Spaulding vs. The Chicago & Northwestern Railway Company.

*Cassoday & Carpenter,* for respondent :

1. If one of the fires was caused by a firebrand thrown by the fireman or engineer in charge of defendant's locomotive engine, defendant is liable for the damage resulting therefrom ; and it cannot be relieved of such liability by employing firemen or engineers so reckless as to throw the brand into the dry material on the right of way intentionally. *Lannen v. The Albany Gas Light Co.,* 44 N. Y., 459 ; *Sanford v. The Eighth Av. R. R. Co.,* 23 id., 343 ; *Castle v. Duryee,* 2 Keyes, 169 ; *Southwick v. Estes,* 7 Cush., 385 ; *Pa. R. Co. v. Vandiver,* 42 Pa. St., 365 ; *Johnson v. Barber,* 5 Gilman, 425 ; *Seymour v. Greenwood,* 7 Hurl. & Nor., 356 ; *Meyer v. Second Av. R. Co.,* 8 Bosw., 305 ; *Phil. & Read. R. R. Co. v. Derby,* 14 How. (U. S.), 468 ; *Jones v. Glass,* 13 Ired. Law, 305 ; *Stucke v. M. & M. R. R. Co.,* 9 Wis., 202 ; *Pritchard v. L. C. & M. R. Co.,* 7 Wis., 232. The doctrine that where a servant goes outside of the course of his employment, and outside of the scope of his business, and maliciously injures a third person, such person's redress is against the servant and not against the master, has no application to the case. There is no ground for imputing to the fireman a malicious purpose to injure the plaintiff by burning his timber, unless it be the fallacious assumption that wherever a person performs a careless act, he must necessarily have in his mind and intend the final result of that act, however injurious it may be, and however great the series of causes and events which may intervene. In addition to the cases above, see *Smith v. Webster,* 23 Mich., 298 ; *Ramsden v. Boston & A. R. Co.,* 104 Mass., 117 ; *Higgins v. W. T. R. Co.,* 46 N. Y., 23. 2. As to the question of negligence in the construction or condition, or in the management, of the engines, counsel contended that the instructions given were more favorable to the defendant than those they were entitled to, in holding that negligence could not be inferred from the mere fact of fire having escaped from them (30 Wis., 121–2 ; *Bedford v. H. R. R. Co.,* 46 Mo., 456), that it must be presumed that the jury obeyed this instruction,

and that defendant could not, therefore, be injured by the charge that if the fires were produced by the use of defective or improper engines, defendant was liable, nor, by the refusal to instruct the jury, as requested, that the evidence did not warrant a finding that defendant was guilty of any fault or negligence respecting either the construction or condition of its engines. Besides, the law does not authorize a court to instruct a jury that a presumption of fact has been overcome by other evidence. In jury cases the *weight* of evidence is exclusively for the jury. *Pettingill v. Porter*, 8 Allen, 1; *Reed v. Inhabitants of Deerfield*, id., 522; *Cushing v. Willard*, 11 Gray, 247; *Kiester v. Miller*, 25 Pa. St., 481; *Brooke v. G. T. R. R.*, 15 Mich., 332; *Peebles v. Tomlinson*, 33 Ala., 336; *Ely v. Tesch*, 17 Wis., 202; *Kuehn v. Wilson*, 13 id., 104; *Mercer v. Wright*, 3 id., 645. Whether the *prima facie* evidence of a fact arising from such a presumption is overcome by oral testimony, depends entirely upon the *weight* of such testimony, and this again depends greatly upon the *credibility of witnesses;* and as these are questions exclusively for the jury, it follows that the court cannot rightfully instruct the jury that the *prima facie* evidence is overcome by the testimony on the other side. 1 Greenl. Ev., § 48; *Foster v. Berkey*, 8 Minn., 351; *Freemantle v. R. R.*, 10 C. B. (N. S.), 88.

LYON, J. This case was here on a former appeal, and is reported in 30 Wis., 110, where a sufficient statement of the principal facts of the case may be found. With a single exception, which will be mentioned hereafter, the testimony on the last trial is substantially the same as that produced on the first trial. The plaintiff again recovered, and the defendant again appeals to this court.

Upon the subject of the alleged negligence of the defendant in permitting combustible material to accumulate and remain upon its grounds along the railroad track, the instructions which the court gave to the jury on the last trial seem to be

identical in principle with those given on the first trial and approved by this court.

On the last trial, testimony was introduced for the first time, tending to show that at or near the place where one of the fires originated, and just before it started, the fireman or engineer on the defendant's engine, which was then passing that point, threw from the engine a burning stick of wood, from which the fire started, or might have started. It was proved by the undisputed testimony of the engineers of the defendant, that it was not unusual for the fireman to throw off sticks of wood which had been tried and found too large to enter the furnace door, and to which fire might adhere. The court refused to give an instruction prayed for on behalf of the defendant, to the effect that if the defendant's employee willfully threw the burning stick into inflammable material near the track, and thus caused the fire by which the plaintiff's timber was injured, the defendant is not liable therefor. On the contrary, the court instructed the jury that if the fire originated in that manner, and if the act was negligence, the defendant is liable for such injury. This is claimed to be error. But we are of the opinion that the throwing out of the stick of wood, under the circumstances, was within the scope of the servant's employment, and hence, if the act was a negligent one, the defendant is answerable for the consequences. We conclude, therefore, that the court held correctly on this point.

On both trials the court, submitted to the jury the question of fact, whether the engines of the defendant, which, it is alleged caused the fires complained of, were constructed with reasonable care and skill and provided with proper appliances to prevent, as far as practicable, the escape of fire therefrom, and refused to charge the jury, as requested on behalf of the defendant, that the evidence did not warrant a finding that the defendant was guilty of any fault or negligence in the construction or condition of such engines. The testimony relating to the condition of the engines, introduced on behalf of the de-

fendant on both trials, was entirely uncontroverted, and it proved that they were properly constructed and equipped, and provided with all of the most modern and approved appliances for preventing the escape of fire. The opinion by the chief justice on the former appeal contains a very strong intimation that the refusal to give the instruction above mentioned was error, which alone was sufficient to reverse the judgment appealed from. The judgment was, however, reversed upon other grounds, and the point was not decided. The same question is again presented by the present appeal, and under circumstances which require that it be definitely determined.

The rule of law is, doubtless, that where there is no conflict of testimony, where the existence of a fact is clearly proved by the undisputed testimony, the court should hold that the fact is established, and it is error to leave it to the jury to find whether or not the fact exists. *Storey v. Brennan*, 15 N. Y., 524; *Gale v. Wells*, 12 Barb., 84; *Small v. Smith*, 1 Denio, 583; *New York & Erie R. R. Co. v. Skinner*, 19 Pa. St., 298; *Harris. v. Wilson*, 1 Wend., 511; *Goodman v. Simonds*, 20 How. (U. S.), 359; *White v. Stillman*, 25 N. Y., 541; *Michigan Bank v. Eldred*, 9 Wal., 553.

But the learned counsel for the plaintiff very ingeniously argue, that the presumption that the defendant's locomotives were not properly constructed and equipped (which, it was held on the former appeal, arises in a case where the fires complained of are communicated from them), has the force and effect of testimony in the case; and that the question whether the testimony introduced for the purpose of overcoming such presumption is sufficient for that purpose, is necessarily a question of fact to be determined by the jury. The argument would probably be a sound one, were this a presumption of fact. Its weight and force, and consequently the amount of proof essential to overcome it, would in such case be for the jury, and not for the court, to determine. But the presumption under consideration is clearly one of law, and is governed by

an entirely different rule.    Its weight and effect, and the amount and character of the proof necessary to overcome it, are questions for the court, and were determined by this court on the former appeal.    In such cases, if there is a conflict of testimony, the jury must determine what facts are proved; but where, as in this case, there is no such conflict, and the testimony is clear and satisfactory against the presumption, it is the duty of the court to hold, as matter of law, that the presumption is overcome.    If, instead of doing so, the court leaves it to the jury to determine the fact, it is error, within the cases above cited, which will work a reversal of the judgment, if the party against whom it was committed was, or might have been, injured by it.    For a very satisfactory statement of the nature of presumptions, whether of fact or law, and the distinctions between them, see 1 Greenl. Ev., ch. 4, title "Presumptive Evidence," and particularly §§ 14, 33, 44 and 48.

The better opinion seems to be, that no disputable presumption of law is to be regarded as testimony which must necessarily be submitted to a jury, but its office is merely to determine upon which party the *onus probandi* is laid.    Thus, in *Davenport v. Schram*, 9 Wis., 119, the action was for the price of certain goods, sold by the plaintiff to the defendant.    The defense was payment by the sale and transfer of a note of a third person.    Now the presumption of law is, that the note was not received by the plaintiff as a payment for the goods. Yet it was held that the testimony, *prima facie*, overcame the presumption, and the judgment of the court below, for the plaintiff, was reversed because the judge refused so to instruct the jury, but submitted it to the jury, upon all of the testimony, to find whether the note was received by the plaintiff as a payment for the price of the goods, or otherwise.    The decision in *Davenport v. Schram* is not in conflict with the cases cited on behalf of the plaintiff.    That decision seems applicable here, unless a feature of this case, now to be considered, distinguishes the two cases.

The learned circuit judge instructed the jury that if the fires were caused by the escape of sparks from the engines of the defendant, that fact alone was not sufficient to justify a finding that such engines were defective in any respect, either as regards construction or condition. The instruction is more favorable to the defendant than is warranted by the decision of this court on the former appeal; for the opposite doctrine is there asserted. The instruction casts upon the plaintiff the burden of showing that such engines were not in proper condition, and inasmuch as there was no testimony tending to prove that fact, the counsel for the plaintiff argue, with much ingenuity, that the defendant could not have been injured by the refusal of the court to take from the jury the question of the sufficiency of the engines.

Could it be demonstrated that the jury found that the engines were in proper condition when the fires occurred, and that they did not base their verdict upon a contrary finding, the position of the learned counsel would doubtless be a correct one. But the difficulty with the argument seems to be, that the case admits of no such demonstration. The fact that the question of the sufficiency of the engines was submitted to them may have been, and probably was, taken by the jury as an intimation by the court that there was testimony in the case from which they might find that the engines were defectively constructed or were in a defective condition. We can not say that the jury did not so find, or that such finding is not the sole basis of the verdict and judgment for the plaintiff.

It follows from the foregoing views that the judgment of the circuit court must be reversed, and a new trial awarded.

Dixon, C. J. I see no inconsistency between the views expressed in the foregoing opinion and those expressed by myself in *Graves v. The State*, 12 Wis., 591, and *Welch v. Sackett*, id., 243, in relation to what is a presumption of law, and what one of fact; and I therefore concur with Mr. Justice Lyon that the

presumption in this case is properly denominated a presumption of law. It is a presumption drawn or indulged by the court, as distinguished from one which must be drawn by the jury, which furnishes the practical test whether it is a presumption of law or of fact. This whole subject is most learnedly and elaborately examined in *State v. Hodge*, 50 N. H., 510, in which a like question arose as in *Graves v. The State*, and where the doctrine of the latter case as to the nature of the presumption is distinctly affirmed.

*By the Court.* — Judgment reversed, and new trial awarded.