# THE BALTIMORE CITY PASSENGER RY. CO. *vs.* T. HARRY NUGENT.

*Negligence—Carriers—Injury to Passenger From Breaking of Trolley Wire—Degree of Care Required of Carriers of Passengers—Hidden Defect—Accidental Injury Not Resulting From Negligence—Evidence of Physical Condition—Practice—Election to Have Trial by Jury in Baltimore City.*

A carrier of passengers is bound to exercise the utmost care and diligence which human foresight can use, but a carrier is not an insurer of the safety of passengers.

When an injury to a passenger occurs, the injury itself is treated as *prima facie* evidence of negligence, but this presumption may be rebutted by showing that the carrier had exercised that degree of care and diligence to guard against injury which the law requires, and in such case the carrier is not liable because it has not been negligent.

If the utmost care with the aid of the most advanced scientific methods is unable to discover latent defects that are searched for in the appliances used by a carrier, and if proper skill be employed in the construction of those appliances which are themselves appropriate, and still an injury happens not from negligence in their use, but solely from some hidden defect in the material which adequate and careful inspection failed to reveal, then such an injury is to be treated as resulting from a non-actionable accident and not from negligence.

Plaintiff, a passenger on a street railway car operated by an overhead electric trolley, was standing on the rear platform when the overhead wire broke and the end came into contact with plaintiff, causing an injury  In an action against the company, the declaration alleged that the wire in question was through the carelessness or negligence of the company out of repair, and consequently broke and fell upon plaintiff. *Held,*

1st. That if the defendant company employed competent contractors to erect the trolley wire, and if the contractors used proper material and a skillful method of construction, and if the breaking of the wire was caused by a hidden defect not apparent to the eye and which the defendant could not have discovered by any reasonable examination, then the plaintiff is not entitled to recover.

2nd. That since the declaration did not count on negligence in the operation of the trolley wire and car, the defendant had a right to have the jury confined to the issue made by the pleadings.

3rd. That it was error to instruct the jury that if the broken wire was dragged upon the back platform against the plaintiff by the momentum of the car, then the verdict should be for the plaintiff unless the defendant's employees could not by the exercise of reasonable care have prevented the trolley wire from being dragged upon the platform, because there was no evidence in the case to support such an hypothesis.

In an action to recover damages for a personal injury, a witness, not an expert, may be asked to describe plaintiff's physical condition after the injury, when the testimony relates to the fact that the plaintiff appeared to be lame, etc., and did not express an opinion of the witness.

A rule of the Supreme Bench of Baltimore City adopted under the Constitutional Amendment, Act of 1892, ch. 313, provides that causes in the common law Courts of that city shall be tried before the Court without a jury unless an election in writing for a trial by jury shall be filed in the case, and that such an election must be made by the plaintiff not later than fifteen days after filing the declaration and by the defendant at or before filing the first plea. *Held,*

1st. That under this rule, an election for a trial by jury must be a separate and distinct act evidenced by a writing different from the pleadings.

2nd. That a declaration concluding with the words, "Wherefore he brings this suit and claims $5,000 damages and prays a jury trial," is not a sufficient election under the rule.

Appeal from a judgment of the Court of Common Pleas (HARLAN, C. J.) At the trial the following prayers were offered:

*Plaintiff's 1st Prayer.*—That if the plaintiff, Nugent, while a passenger on one of the defendant's cars and while exercising ordinary care, was shocked and knocked off said car and injured by coming in contact with the end of a broken trolley wire used by defendant in the operation of their railway, then their verdict must be for the plaintiff, unless they shall further find that by the exercise of that high degree of care required by reason of the well known dangerousness of the agency employed, the defendant could not have prevented the injury complained of.

*Plaintiff's 2nd Prayer.*—That if the plaintiff, Nugent, while a passenger on one of the defendant's cars, and while using ordinary care, was injured by coming in contact with

a broken trolley wire of the defendant, and shall further find that the broken trolley wire became entangled in the trolley pole and was dragged upon the back platform and against the person of the plaintiff by the momentum of the car, then their verdict must be for the plaintiff, unless they shall further find that the defendant's employees could not by the exercise of reasonable care have prevented the trolley wire from being dragged up on the platform. (Granted).

*Defendant's 1st Prayer.*—That the law does not make a street railway company an insurer of the safety of its passengers, or require it to adopt every possible contrivance looking to their safety that human ingenuity can suggest, and that if they find from the evidence that the defendant had, in reference to both the erection and maintenance of the trolley wire and car mentioned in the evidence, used every reasonable safeguard which the nature of its business admitted, it has performed its duty in the premises and the verdict must be for the defendant.

*Defendant's 2nd Prayer.*—If the jury find that the accident complained of by the plaintiff was caused solely by a hidden or latent defect, not apparent to the eye, in the trolley wire of the defendant, and that the defendant could not have discovered or detected by any reasonable examination by the defendant or its agents, and the jury further find that the defendant company employed proper and suitable contractors to erect the trolley wire and overhead construction at the place of the accident, and that such contractors used suitable and proper material and a proper and skillful method of overhead construction, then the defendant has performed its duty to the passenger in this regard and the verdict must be for the defendant, even though the jury further find that the plaintiff, without fault on his part, did receive injuries by reason of the breaking and falling of said trolley wire.   (Rejected).

And the Court modified the first prayer of the plaintiff so that it read as follows :

The Court instructs the jury, that if they find that the plaintiff, Nugent, while a passenger on one of the defendant's cars and while exercising ordinary care, was shocked and knocked off said car and injured by coming in contact with the end of a broken trolley wire used by defendant in the operation of their railway, then their verdict must be for the plaintiff, unless they shall further find that the injury complained of could not have been prevented by the exercise on the part of the defendant and its servants of the highest degree of care and diligence practicable under the circumstances. And granted it as modified. And the Court granted the second prayer of the plaintiff. And the Court modified the first prayer of the defendant by inserting after the words " every reasonable safeguard," the following words : "and the highest degree of diligence practicable under the circumstances." And granted it as modified, and rejected the second prayer of the defendant.

The jury returned a verdict for the plaintiff for $1,200.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, ROBERTS and BOYD, JJ.

*Arthur W. Machen* and *William S. Bryan, Jr.*, for the appellant, cited the following authorities upon the question of negligence : *Daniel* v. *Met. Ry. Co.*, L. R. 3 C. P. 222 ; *Fearn* v. *West Jersey Ferry Co.*, 143 Pa. St. 122 ; *Peisling* v. *C. B. & Q. R. Co.*, 71 Iowa, 565 ; *Norfolk &c., R. Co.* v. *Marshall's Admr.*, 90 Va. 836 ; *Carter* v. *R. R. Co.*, 42 Fed. Rep. 39 ; *Union R. Co.* v. *Steever*, 72 Md. 159 ; *Booth on Street Railway Law*, section 332 ; *Cason's case*, 72 Md. 380 ; *Pitts* v. *Chicago City Ry. Co.*, 33 Fed. Rep. 610 ; *Fleming* v. *Pittsburgh, &c., R. R.*, 158 Penn. St. 130 ; *Curtis* v. *Railroad*, 18 N. Y. 543 ; *Railroad* v. *Lauricella*, 87 Texas, 279.

*Sidney Hall* and *Joseph W. Bristor* (with whom was *Thos. C. Ruddell* on the brief), for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This is is an action to recover damages for a personal injury. The facts so far as they need be recited to present the questions of law which are brought up by the second and third bills of exception are few and simple and will be stated in a moment. The ruling complained of in the first bill of exceptions has reference to a question of practice and though arising earliest on the record will be considered and disposed of last because it does not pertain to the merits of the controversy.

The appellant is a corporation owning and operating a street railway in the city of Baltimore. The motive power used to propel its cars is electricity, which is applied by the overhead trolley system. On the day that the injury complained of happened, the appellee boarded one of the company's cars, taking a seat on the inside, but afterwards, owing probably to the crowded condition of the car, going to and standing on the rear platform. Shortly thereafter the trolley wire broke some few inches from a brass sleeve which spliced together the ends of the separate wires that, when united, formed the continuous trolley wire. That part of the broken wire which was above the car and which stretched in the direction that the car was going, was carried on the trolley-pole as the car proceeded ; and as the car moved forward the wire charged with the electric current was paid out over the trolley-wheel, and the severed end fell upon the roof of the car and thence over its rear edge and came in contact with the appellee, who was thrown by the shock, or who, receiving a shock therefrom, jumped to the ground and was injured. The period of time intervening between the breaking of the wire and the injury to the appellee was only a few seconds. The record fails to show that the car could have been stopped in a shorter space of time than it was, or that the employees in charge of it could have done anything which they omitted to do to avoid the injury. There was evidence adduced by the appellant tending to prove that the wire broke from a latent

defect that no test or inspection could have discovered and that no human foresight could have guarded against. That the wire had been subjected to all the tests known to science, if not before it was sent from the factory where it was made, at least before it was put in place, and that since it had been in use it had been regularly and carefully inspected. It was further shown that the most skilled contractors had constructed the line and that the best materials which could be procured had been used. There was also sufficient evidence before the jury from which they well might have found—if they believed that evidence to be true—that the wire broke from no fault or negligence of the company or its employees; and they might likewise have concluded, for the testimony, if credited, warranted the conclusion, that the highest degree of care and caution known to science had been used by the company in providing the best materials, appliances and workmanship in the building of its trolley system.

The declaration contains a single count. It avers that a certain wire, the property of the defendant, and which it was its duty to keep in repair, was, *through the carelessness and negligence* of the company and its servants, *out of repair*, and in consequence broke and fell upon the plaintiff, who at that time was using due care and caution.

Under this declaration and upon this proof each of the parties presented two prayers for instructions to the jury. The Court of Common Pleas granted the plaintiff's second prayer, modified his first and as modified granted it; rejected the defendant's second, modified its first and as modified granted it. To this action of the Court the third bill of exceptions was taken.

The plaintiff's first prayer needs no discussion. The objection made to it in the Court below was that it left to the jury a question of law in not defining the degree of care required of the defendant. No point is suggested in the brief against this prayer, and we think the one raised below is not tenable. It defined the degree of care and diligence

exacted of the defendant as the " highest degree of care and diligence practicable under the circumstances." This, as we shall see later on, correctly described the extent of the duty owed by the carrier to the plaintiff.

The plaintiff's second prayer should not have been granted. There was a special exception interposed to it in the trial Court upon the ground that there was no evidence to support one of its hypotheses. This objection ought to have been sustained. The prayer instructed the jury that if they should find from the evidence that the plaintiff whilst a passenger on the defendant's car and whilst using due care was injured by contact with a broken trolley wire, and that the broken wire was dragged upon the back platform and against the plaintiff by the momentum of the car, then their verdict would have to be for the plaintiff, " *unless they shall further find that the defendant's employees could not by the exercise of reasonable care have prevented the trolley wire from being dragged up on the platform.*" Now, there is not a particle of evidence in the record to support the hypothesis we have put in italics, and it was consequently error to have submitted such an hypothesis to the jury. We may remark, in passing, that the theory of the prayer is directly at variance with the declaration. It does not, it is true, refer to the pleadings and would not therefore on the ground of variance be open to criticism, but it shifts the right to recover from the one alleged in the *narr.* to a totally different ground. If the cause of the injury was, as charged in the declaration, the bad condition or disrepair of the wire, and this bad condition or disrepair was really due to the negligence of the defendant, and injury ensued as a consequence, then the cause of action declared on was proved, and it made and could make no possible difference whether the employees in charge of the car could or could not have prevented the wire from being dragged upon the platform *after it had in consequence of prior negligence, broken and fallen on the car.* Even if the employees could not by the utmost care have

prevented the wire from being so dragged upon the plat-
form, the right of action would still have been perfect if the
efficient cause of the injury was in reality the antecedent
imputed negligence of the defendant in permitting the wire
to be out of repair.

The substantial error of law into which the learned Judge
below inadvertently fell was in refusing to grant the defend-
ant's second prayer.    By that prayer the defendant sought
an instruction to the effect that if the jury should find that
the accident to the plaintiff was caused "solely by a hidden
or latent defect, not apparent to the eye in the trolley wire,"
and which "the defendant could not have discovered or
detected by any reasonable examination," and that if the
company employed proper and suitable contractors to erect
the wire and overhead construction at the place of the acci-
dent and if the contractors used suitable and proper material
and a proper and skillful method of overhead construction,
"then the defendant has performed its duty to the passen-
ger in this regard and the verdict must be for the defendant,
even though the jury further find that the plaintiff without
fault on his part, did receive injuries by reason of the break-
ing and falling of said trolley wire."

A carrier of passengers is not an insurer of their safety.
This is the settled law.    Such a carrier is only bound to
employ the utmost care and diligence which human fore-
sight can use.    *Was. Turpk. Co.* v. *Case*, 80 Md. 45 ; *State,
use of Coughlan*, v. *B. & O. R. R. Co.*, 24 Md. 102.    This
is the limit and the measure of the duty which he owes to
the passenger.    His failure or omission to discharge that
duty is an act of negligence and if injury results from that
negligence an action will lie.    It is apparent, then, that all
actions of the kind we are now dealing with, to be main-
tained, must be founded on negligence of the defendant,
both asserted and proved.    If there be no negligence,
though there be an injury, no action will lie.    Negligence
is essentially relative.    In the abstract it is a nullity—it
does not and it cannot in the nature of things, exist.    It is

metaphysically impossible to evolve a concept of negligence apart from the facts which give rise to it and independently of some imposed or implied correlative duty. The duty must be essentially related to the particular circumstances and a variance in the circumstances necessarily begets either a modification of the duty or else extinguishes it altogether. Thus the duty which a railroad company owes to a passenger whom it is carrying on its train, is widely different from the duty it owes to a trespasser on its tracks ; not only because the rights of the two are different, but because the attendant circumstances and facts creating the reciprocal rights, in each instance, are dissimilar. This difference in rights and in duties springs from a divergence in the circumstances out of which they respectively grow. Consequently a condition which would in one case give rise to an inference of negligence, would be wholly insufficient to justify its deduction in the other. Because this is so, it follows that the conditions under which an injury to a trespasser and to a passenger happens, produce different evidentiary results—in the one case, the injury, if flowing from defective appliances, being in itself on grounds of policy and convenience, *prima facie* evidence of negligence in respect to the appliances which produced the injury ; whilst in the other instance it—the injury—is simply neutral and indifferent as respects the proof of negligence. Negligence and injury are cause and effect ; but negligence is not the only cause of injury. As in all cases where the injury itself is treated as *prima facie* evidence of negligence this *prima facie* evidence is rebuttable, it results that the burden of proof to show that the injury arose from some other cause than negligence is cast upon the party against whom the *prima facie* evidence has raised the inference of negligence. *Prima facie* proof of negligence is not conclusive proof that negligence in fact existed. It furnishes sufficient evidence, if nothing to the contrary be shown. Every injury does not necessarily result from negligence. There are acts of God involving a *vis major*, and there are

accidents, including no elements of negligence because occasioned by no breach of any imposed or implied duty at all. An act of God injures no one. When an act complained of and alleged to be negligence could not by the exercise of proper diligence have been foreseen and is concurrent in its origin with the resulting injury and as simultaneous therewith as physical cause and effect can be, and there is no antecedent dereliction or breach of duty, actual or constructive, constituting an ulterior or primary cause, the act belongs not to the class of negligent acts, but to that described as accidents. *Wash. Turnpk. Co.* v. *Case, supra.* For a mere accident, unmixed with negligence or fault no action will lie even though an injury has been done; and no action will lie because there has been no breach of a duty that was owed and therefore no negligence. *Gault* v. *Humes*, 20 Md. 297; 1 *Am. & Eng. Ency. Law*, 2 edition, 272, 273, note 2. If in a given case where an injury has happened and where by reason of the duty that is owed and the circumstances existing, the presumption of negligence arises from the mere fact of an injury having been sustained, it be shown that the duty which was owed to the party receiving the injury had been performed to the full measure that the law exacts; then, there is no breach of duty, and there being no breach of duty there is and there can be no negligence. This conclusion must be legally and logically, applicable to a case like the one before us if the carrier is not an insurer of the passenger's safety; and if the conclusion be inapplicable it can only be so because the carrier *is* an insurer of the safety of the passenger.

The measure of duty which a carrier owes to a passenger is, as we have said, the utmost care and diligence which human foresight can use. If human foresight, with the aid of the most advanced scientific methods yet discovered, is powerless to detect latent defects that are searched for in the appliances used by the carrier; and if proper skill be employed in the construction of those appliances and if the appliances themselves are appropriate, and still an injury

happens, not from negligence in their use, but solely and exclusively from some hidden defects in their structural materials that adequate and careful inspection, seasonably and faithfully employed, failed to reveal; then, such an injury is referable to a non-actionable accident and not to negligence.   There may be negligence predicated of an improper or careless operation or use of a perfectly sound appliance, but that is negligence in the manipulation or employment and not in the construction of the thing causing the injury.   With that species of negligence the prayer does not deal, and it is consequently not involved in this discussion.   The prayer we are considering left it to the jury to find whether the injury sued for resulted *solely* from a hidden defect in the wire, which defect could not have been discovered by any reasonable examination, and it also left it to them to find whether proper and competent contractors had been employed to erect the structure, and whether suitable materials had been used and a skillful method had been pursued in the work; and it then instructed them, as the legal conclusion from an affirmative finding of these hypotheses, that the appellant had performed its duty to the passenger in so far as that duty related to the providing of proper appliances that were alleged to have caused the injury; and of course it necessarily followed that if its whole duty in this regard had been done there was no breach of a duty owed to the passenger and consequently no negligence of the character charged in the declaration; and if there was no negligence there was no cause of action. Under these conditions the injury was the result of accident. This prayer contained a correct exposition of the law, and the jury ought to have been instructed to that effect.   The refusal to do so was error.   In addition to the adjudged cases hereinbefore cited we may, in support of the legal principle announced in the prayer, refer to the following: *Crutchfield* v. *Richmond, &c., R. R. Co.,* 76 N. Car. 320; *Handelun* v. *Burlington, &c., R. R. Co.,* 72 Iowa, 709; *Wabash, &c., R. R. Co.* v. *Locke,* 112 Ind. 404; *Carrico* v. *West*

*Va. Cent., &c., R. R. Co.,* 24 L. R. A. 50; *Libby* v. *Maine Cent. R. Co.,* 85 Me. 34; *S. C.,* 20 L. R. A. 812; *Spellman* v. *Lincoln Rapid Transit Co.,* 36 Neb. 890; *Simmons* v. *New Bedford, V. & N. Steamboat Co.,* 97 Mass. 361–367.

There was error also in refusing to grant the first prayer of the defendant as offered.    The declaration did not count on negligence in the *operation* of the trolley wire and car ; nor did it allege that an injury had resulted from the negligence of the servants in charge of the car, as negligence in the operation of the car involves ; but it proceeded exclusively on the ground that the *wire* was, through carelessness and negligence, *out of repair,* and in consequence broke and breaking inflicted the injury complained of.    The defendant clearly had the right to have the jury confined to the issue made by the pleadings, and its first prayer as presented did this ; but the modification of that prayer amplified and enlarged the issue.    In this there was obvious error.

The second exception brings up a ruling as to the admissibility of evidence.    A witness, not an expert, was asked what was the condition of the plaintiff on September the twelfth—one month and eight days after the date of the accident.    And the witness replied that he " looked very bad, he was lame, and he could scarcely go up stairs," &c. The question and answer were excepted to.    The witness was not asked an *opinion*—she was simply required to describe the plaintiff's physical condition, and this she was competent to do because it was merely the description of a *fact* which she had seen.    Its weight and value was for the jury.    We see no error in the ruling.

The first exception brings up a new question of practice. By sec. 6, Art. 15 of the Constitution, a trial by jury of all issues of fact is guaranteed to every litigant when the sum in controversy exceeds five dollars, though it is competent, under sec. 8, Art. 4, for the parties to a proceeding to waive that right and to submit the cause to the Court for determination without the aid of a jury.    It was found in actual practice that these provisions resulted in congesting the

dockets of the common law Courts in the city of Baltimore, and accordingly an amendment of the organic law was proposed by the General Assembly during the session of 1892. This amendment was subsequently adopted by the people. Amongst other things it declares that " the General Assembly may provide by laws, or the Supreme Bench (of Baltimore City) by its rules, for requiring causes in any of the Courts of Baltimore City to be tried before the Court without a jury, unless the litigants or some one of them shall within such reasonable time or times as may be prescribed, elect to have their causes tried before a jury." This amendment, it will be seen, requires the causes therein referred to, to be tried by the Court unless an election to have a jury trial is made ; and produces precisely the converse of the condition which prevailed prior to its adoption. Acting under the authority thus conferred upon it, the Supreme Bench adopted a series of rules to put the amendment into effect. Those rules provide that all causes standing for trial in the common law Courts of the city shall be tried before the Court without a jury, unless an election in writing be filed for a trial before a jury. They further declare that such election must be made by the plaintiff not later than fifteen days after the filing of the declaration ; and that defendants must make such election at or before the time of first filing a plea, but in no event after the time allowed by law to plead. It is also prescribed that " such election shall not be withdrawn except by written consent of all the parties filed in the case." The original declaration filed in this case concluded with these words : "Wherefore he brings this suit and claims $5,000 damages, and prays a jury trial." Subsequently an amended declaration was filed and immediately following the claim for damages these words appear : " The plaintiff prays a jury trial." This is the only election made by either of the parties to have the case tried by a jury. When the case was called for trial in the Court of Common Pleas the appellant filed a motion asking that a trial be had before the Court without the aid of a jury, assign-

ing as a reason, in support of the motion, the omission of the plaintiff to file, in the manner and within the time fixed by the rules, an election for a trial before a jury. This motion was overruled and to that adjudication the first bill of exceptions was taken. We think there was error in this ruling.

There was no election by the plaintiff other than the concluding words which we have quoted from the declaration. These words were in fact a part of the declaration. A withdrawal of the declaration under leave of Court would have withdrawn the election for a trial by a jury, notwithstanding the rule forbids a withdrawal of an election without the consent of both parties. It was the obvious intent of the rule that an election for a trial by a jury should be a separate and distinct act, evidenced by a writing different from the pleadings, so that no change in the latter could affect or interfere with the former. Clearly the correct practice under the rule is the one just indicated. There is an additional reason. By the same rule it is made the duty of the several clerks as soon as it is ascertained that a cause will not be tried by a jury to transfer the same to a separate trial docket entitled " non jury cases," and the trial shall take place before the Judge at Large. Now, it was manifestly not the design of the rule that the clerks of the several Courts should examine all the pleadings to ascertain whether somewhere amongst them there might be found a claim for a trial by jury ; and to obviate the necessity for such an examination the rule plainly provides that the election shall be filed in writing, not later (if filed by the plaintiff) than fifteen days after the filing of the declaration. The two things, viz., the election in writing and the declaration are treated by the rule as distinct and independent ; and it is clearly error to combine them in one paper. A declaration is simply the statement of the plaintiff's cause of action, and it has nothing to do with the *mode* of trial. The election is a mere designation of the mode of trial and has nothing to do with the thing to be tried. Strictly the declaration should con-

tain no averments or statements beyond those that are necessary to set forth the cause of action ; and hence a distinct step in the case relating only to the mode of trial ought not to be made a part of the declaration with which it has no concern.   What is true of the declaration is true also of the pleas and the election should form no part of them.

For the errors we have pointed out the judgment must be reversed and as the truth of the evidence adduced by the defendant is a matter wholly for the jury or the Court sitting as a jury to pass upon, a new trial will be awarded.

> *Judgment reversed and new trial awarded with costs above and below.*

(Decided November 17th, 1897).