[No. 9227.   Department Two.   April 5, 1911.]

ADELAIDE SCARPELLI *et al.*, *Appellants*, v. WASHINGTON
WATER POWER COMPANY, *Respondent*.[1]

TRIAL—SPECIAL VERDICTS—LACK OF EVIDENCE.  A special finding
that brackets were too light to sustain a wire, when there was no
evidence on the subject, is a mere conjecture and not controlling.

TRIAL—SPECIAL VERDICTS — UNCONTROVERTED EVIDENCE. . A special
finding by a jury that a wire was not thrown down by a certain acci-
dent cannot be sustained where it disregards the uncontradicted evi-
dence in the case.

TRIAL—PROVINCE OF COURT AND JURY.  Where plaintiff's *prima
facie* case, sufficient on motion for a nonsuit, is so fully explained
and controverted as to leave no substantial conflict, the case should
be taken from the jury.

ELECTRICITY—NEGLIGENCE — EVIDENCE — PRESUMPTIONS — TRIAL —
QUESTION FOR COURT.  Where plaintiff's case rested upon the legal
presumption of the negligence of the defendant in allowing one of its
high-power wires to fall from its support, plaintiff showing no cause
for the fall of the wire, and the defendant's evidence showed that the
power wire had just been knocked down by the breaking of a cable
employed by the city in construction work on the street, which evi-
dence was not controverted, there is no issuable fact for the jury,
and the defendant was not guilty of negligence, as a matter of law;
a presumption of law not being evidence of a fact or effective in the
face of the opponent's *prima facie* evidence.

Appeal from a judgment of the superior court for Spokane
county, Huneke, J., entered June 2, 1910, in favor of the
defendant, notwithstanding the verdict of a jury rendered in
favor of the plaintiffs, in an action for wrongful death.  Af-
firmed.

*Peacock & Ludden*, for appellants, contended, among other
things, that where there is a presumption of negligence, it
is for the jury to say whether the defendant made a sufficient
showing to relieve it from the charge of negligence.  *Lane v.
Spokane Falls & N. R. Co.*, 21 Wash. 119, 57 Pac. 367, 75
Am. St. 821, 46 L. R. A. 153; *Chicago City R. Co. v. Barker*,

[1] Reported in 114 Pac. 870.

209 Ill. 321, 70 N. E. 624; *Uggla v. West End St. R. Co.,*
160 Mass. 351, 35 N. E. 1126, 39 Am. St. 481; *O'Flaherty v.
Nassau Elec. R. Co.,* 34 App. Div. 74, 54 N. Y. Supp. 96;
*Lane v. Spokane Falls & N. R. Co.,* 21 Wash. 119, 57 Pac.
367, 75 Am. St. 821, 46 L. R. A. 153; *North Chicago St.
R. Co. v. Cotton,* 140 Ill. 486, 29 N. E. 899; *Louisville etc.
Consol. R. Co. v. Spencer,* 149 Ill. 97, 36 N. E. 91; *Cleveland
etc. R. Co. v. Hornsby,* 202 Ill. 138, 66 N. E. 1052; *Selby v.
Vancouver Water Works Co.,* 32 Wash. 522, 73 Pac. 504;
*Graaf v. Vulcan Iron Works,* 59 Wash. 325, 109 Pac. 1016.

*Post, Avery & Higgins,* for respondent.

Morris, J.—Appeal from a judgment *non obstante vere-
dicto.* Raphael Scarpelli, husband and father of appellants,
was killed August 26, 1909, by being thrown from a wagon
against the street curb. It was alleged in the complaint that
the cause of his death was the negligence of the respondent
in carelessly allowing one of its electric light wires, along
Arthur street, in the city of Spokane, to become detached
from the poles upon which it was strung across Pacific avenue,
and negligently allowing the same to drop to the street; and
that, while the wire was carelessly permitted to remain across
the street, the deceased drove his team across it, causing the
horses to become unmanageable and run away, and throwing
deceased to the ground, whereby he met his death. Issue
being made upon these allegations, trial was had, resulting in
a verdict of $3,000 for plaintiffs, which verdict was set aside
and judgment awarded defendant upon its motion. This act
of the court is the main error relied upon, and a disposal of
which must determine the case.

The evidence introduced by appellants tended to show that
the deceased was driving east on Pacific avenue; that at the
corner of Arthur street an electric light wire, known as a feed
wire, had in some unknown manner, about ten minutes previous
to the approach of deceased, become detached from its pole
on the north side of Pacific avenue, and had fallen across the

avenue. By reason of the. fact that the lots on the north side of the avenue were about ten feet above grade, and those on the south some feet below the grade, the wire as fallen was about six feet above the street surface on the north side, and within a short distance thereof on the south side. Deceased drove across on the south side, and reaching the dangling wire, one of the horses, as described by a witness, "was lunging ahead and the other one was trying to surge back. Finally he rallied them up and jumped over, or on it rather, and the wire was flopping around their legs and they started to run." They continued to run about one thousand feet, when they ran into the curb, throwing deceased to the ground, and inflicting injuries from which he died in a few minutes. This was the only evidence touching the alleged negligence when plaintiffs rested. It was shown that the insulation was off the wire in places, but as this was not charged as negligence and there was no allegation of general negligence, we deem this immaterial. It was of no value to plaintiffs in any event, since from their testimony the fallen wire was the proximate cause of the runaway. The defendant then moved for a nonsuit, which was denied, the court holding that the wire being a dangerous instrumentality, although no cause was shown for its fall, negligence would be presumed; and it being established that the horses came in contact with the fallen wire, it was sufficient to put the defendant upon proof.

The defendant then introduced its evidence, tending to show that the deceased drove under the wire before it fell, and that his horses did not come in contact with the wire, nor were they frightened thereby, but rather by the flopping black cloth of a photographer, who was standing on Pacific avenue taking pictures of the houses along the avenue. It was then shown that the city of Spokane was engaged in construction work along and upon Sprague avenue near Arthur street, west of and parallel with Pacific avenue; that in this work large chains and tackle were used in moving rocks weighing five or six tons; that the carrier ran on pulleys with an endless cable,

which was about four feet below the electric light wire of the defendant on Sprague avenue, and which formed a connection with the Arthur street wire near the street intersection; that while picking up a rock, the chain broke or slipped, and the block and tackle flew up and over and upon defendant's wire, the effect of which was to give the wire a violent jerk, breaking and badly splintering the cross-arm on the pole that carried the Arthur street line, and splintering or breaking the brackets on the poles carrying the wire south on Arthur street. These brackets were of oak, and were fastened to the poles with a sixty-penny spike at the top and a thirty-penny spike at the bottom. Three strands of wire were then wound around the bracket and the pole, so as to make the fastening more secure. The effect of the wrench on the pole just north of Pacific avenue was to break the bracket off, and the wire fell to the ground. This was about ten minutes before the accident to the deceased.

The defendant then rested; and the plaintiffs in rebuttal contested the testimony in regard to the cause of the fright of the horses, but offered no testimony as to the falling of the wire, nor attempted in any way to contradict the testimony in regard to the accident on Sprague avenue, or its effect upon the wires along Arthur street. The case was then given to the jury, with instructions to return several special verdicts, which need not be referred to, with two exceptions, as no question is raised in regard to them, The exceptions are an interrogatory in which the jury is asked the defect which caused the wire to fall, and answered; "Brackets too light for the distance between poles for said wire in question." The other was to the effect that the wire was not thrown down by any force applied at Sprague avenue. The first answer is outside of the issues. No evidence was introduced on that point, and the answer is nothing more than a conjecture on the part of the jury. The second answer disregards the unchallenged and uncontradicted testimony as to the effect of the accident on Sprague avenue. Upon the return of the

verdict, defendant made its motion for judgment, which was granted, and this appeal taken.

Appellants' first contention is that the court, having denied the nonsuit, should likewise have denied respondent's motion for judgment notwithstanding verdict. This does not necessarily follow. While ordinarily, as is said in *Weir v. Seattle Elec. Co.*, 41 Wash. 657, 84 Pac. 597, "testimony which is sufficient to carry a case beyond a nonsuit will carry it to the jury at the close of the testimony," it must be understood that the court is there speaking of contested or controverted testimony which leaves an issue of fact for the jury to decide. But, as is likewise said in the same opinion: "Cases may arise in which a plaintiff's *prima facie* case is so fully explained and controverted as to leave no substantial conflict in the testimony." In such cases it is the duty of the court to take the case away from the jury, either upon a challenge to the sufficiency of the testimony or on a motion for judgment notwithstanding verdict.

"The facts being undisputed, it becomes the duty of the court to apply the law, there being no issue to submit to a jury." *Roe v. Standard Furniture Co.*, 41 Wash. 546, 83 Pac. 1109.

We only need consider, then, whether this was a proper case for the application of such a rule. The ruling on the motion for a nonsuit not being before us for review, it must be conceded that at that time, as held by the court, appellants had made out a *prima facie* case, and had by their evidence established a legal presumption of negligence in showing the contact of the horses with the fallen wire and the consequent result. It thereupon became the duty of the respondent, if it would seek the benefit of the announced rule, to so fully explain and controvert this legal presumption as to leave no issuable fact for the jury to pass upon—not as to the manner of the accident or its results, but upon the charge of negligence made against it in alleging that the fall of the wire was due to its negligence. This was the main charge

against which it must defend, and upon which it must, by un-controverted evidence, establish the negative to escape liability. Has it done so? We agree with the lower court in holding that it has, in showing the Sprague avenue happening, with its consequent effect upon the Arthur street wire. Respondent could not be charged with the Sprague avenue occurrence, as that work was being done by an independent agency—the city of Spokane. The appellants having shown no cause for the falling of the wire, the only evidence before the court as to the cause was that given by respondent. So that upon the charge of negligence there was, at the close of the case, no controversy in the evidence; and the question thereupon became one of law for the court, and not one of fact for the jury. Had the appellants in any manner controverted this evidence, by a showing that it did not occur as contended by respondent, or, occurring, did not cause the Arthur street wire to fall from its post as shown by respondent, then there would have been left a determinable question of fact for the jury; but until there was some issue made as to this evidence, there was nothing to submit to the jury.

In all the cases cited by appellants there was some issuable fact in the showing made by the defendant to relieve itself from responsibility, as in *Lane v. Spokane Falls & N. R. Co.*, 21 Wash. 119, 57 Pac. 367, 75 Am. St. 821, 46 L. R. 9. 153, where the defendant sought to relieve itself by showing that the engine was of standard make and in first class condition; that it had been inspected before going out with the train; that it was equipped with all modern appliances for starting and stopping; that it was in charge of competent men. We held that there was still an issuable fact for the jury as to the character of the inspection, the negligence of the engineer in leaving the engine in charge of the fireman, whether the fireman was equal to the emergency which presented itself when it became apparent the brakes were not in working order, and whether the engine was permitted to approach the train in making the coupling at too great a speed. All these ques-

tions were facts to be determined from the testimony under the issues, and the court could not take the decision of them away from the jury. But we have no such facts to be passed upon here. The only fact is, did such a thing occur, with such a result. Upon this question there was no controversy, and hence no issue for the jury.

In *Graaf v. Vulcan Iron Works*, 59 Wash. 325, 109 Pac. 1016, cited by appellants, the case was submitted to the jury upon plaintiff's evidence, the defendant not attempting to relieve itself from the legal presumption, nor offer any explanation as to the cause of the accident. The presumption, not being weakened or explained, became effectual in law and was decisive of the case. When a plaintiff in actions of this character makes no attempt to show the negligent cause of the act complained of, but relies wholly on the legal presumption of negligence his facts establish, he must accept or controvert the defendant's explanation as to the cause of the act, and show its insufficiency or other nonapplicable features, if he would prevent the court from holding, as a matter of law, that the presumption is overcome.

"The rule of law is, doubtless, that, where there is no conflict of testimony, where the existence of a fact is clearly proved by the undisputed testimony, the court should hold that the fact is established." *Spaulding v. Chicago & N. W. R. Co.*, 33 Wis. 582.

Referring to the contention of appellants that the question whether the testimony introduced for the purpose of overcoming such presumption is sufficient for that purpose and should be submitted to the jury as a question of fact, it is said, in answering the same contention in the *Spaulding* case:

"The argument would probably be a sound one were this a presumption of fact. Its weight and force and consequently the amount of proof essential to overcome it, would in such case be for the jury and not for the court, to determine. But the presumption under consideration is clearly one of law and is governed by an entirely different rule. Its weight and

effect, and the amount and character of the proof necessary to overcome it, are questions for the court. . . . In such cases, if there is a conflict of testimony, the jury must determine what facts are proved; but where as in this case there is no such conflict, and the testimony is clear and satisfactory against the presumption, it is the duty of the court to hold as a matter of law that the presumption is overcome."

The same rule is announced in *Menominee River Sash & Door Co. v. Milwaukee & N. R. Co.*, 91 Wis. 447, 65 N. W. 176; *Central of Georgia R. Co. v. Waxelbaum*, 111 Ga. 812, 35 S. E. 645; *Baltimore City Pass R. Co. v. Nugent*, 86 Md. 349, 38 Atl. 779, 39 L. R. A. 161; *Woodward v. Chicago M. & St. P. R. Co.*, 145 Fed. 577.

In *Peters v. Lohr* (S. D.), 124 N. W. 853, the court, in speaking of the effect and character of "presumptions," says:

"A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue. A presumption will serve as and in the place of evidence in favor of one party or the other until *prima facie* evidence has been adduced by the opposite party; but the presumption should never be placed in the scale to be weighed as evidence. The presumption, when the opposite party has produced *prima facie* evidence, has spent its force and served its purpose, and the party then, in whose favor the presumption operated, must meet his opponents' *prima facie* evidence with evidence and not presumptions. A presumption is not evidence of a fact, but purely a conclusion. Elliott Ev. §§ 91, 92, 93; Wigmore Ev., §§ 2490, 2491."

Appellants not having attempted to lessen the probative force or value of respondent's testimony, either in their main case or in rebuttal, cannot make a controverted question of fact out of that over which there is no controversy, nor treat as a disputed issue of fact that over which there is no dispute. The court was therefore justified in ruling as upon a question of law.

There are other suggested errors, but this one is so de-

terminative of all the questions in the case that, while considering the others, we will not refer to them.

The judgment is affirmed.

DUNBAR, C. J., CHADWICK, and CROW, JJ., concur.